IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-01024-KLM

HARRY BERES,

    Petitioner,

v.

WILBANKS SECURITIES, INC.,

    Respondent.
_____

# ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Petitioner's **Petition to Confirm Arbitration Award** [#1][1] (the "Petition") and Respondent's **Opposition to Confirm Arbitration Award and Cross-Motion to Vacate Arbitration Award** [#12-1] (the "Cross-Motion").[2] Petitioner filed a combined Response [#15] in opposition to the Cross-Motion [#12-1] and Reply [#15] in support of his Petition [#1]. Respondent also filed a Reply [#13] in support of its Cross-Motion [#12-1]. The Court has carefully considered these briefs, the entire case file, and the applicable case law. For the following reasons, the Petition [#1] is **GRANTED in part**

---

[1] "[#1]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

[2] Pursuant to D.C.COLO.LCivR 7.1(d), a Motion "shall not be included in a response or reply to the original motion. A motion shall be filed as a separate document." However, in the interest of expediency, the Court adjudicates both Motions [#1, #12-1] as filed by the parties.

and **DENIED in part**, and the Cross-Motion [#12-1] is **DENIED**.[3]

## I. Background

On September 22, 2008, Petitioner signed a New Account Form with Respondent's then-registered representative, John Stevens ("Stevens"). *See Petition, Ex. 1* [#1-1]. The New Account Form signed by Petitioner and Mr. Stevens (on behalf of Respondent) contained an arbitration provision pursuant to which "[a]ll parties to this agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed." *Id.* The arbitration provision contained a number of agreed guidelines for the arbitration, including that "the arbitrators do not have to explain the reason(s) for their award." *Id.*

In addition to the arbitration provision, the New Account Form also included a separate provision titled "Governing Law." *Id.* This section of the agreement stated that the "agreement shall be governed by the laws of the State of Oklahoma, exclusive of that state's choice-of-law provisions." *Id.* The Governing Law section also included a sentence stating:

> [t]he provisions of this Agreement shall be continuous and cover individually and collectively all accounts which the undersigned may open or reopen with you and shall inure to the benefit of yourselves, your successors and assigns and shall be binding upon the undersigned and/or the estate, executors, administrators and assigns of the undersigned.

*Id.*

Based on the record, at some point in 2012, Petitioner received an overall return on investment of almost 4.9%, which was short of the 7% promised by Mr. Stevens. *Pre-*

---

[3] This matter was assigned to the Court pursuant to the parties' consent to the jurisdiction of a Magistrate Judge. *See* 28 U.S.C. § 636(c); D.C.COLO.LCivR 72.2.

*Hearing Brief* [#7-10] at 4.  On February 2, 2016, Petitioner initiated arbitration against Respondent by filing a Statement of Claim (the "Claim").  *Cross-Motion* [#12-1] at 3.  The arbitration was conducted before a Financial Industry Regulation Authority ("FINRA") panel of three arbitrators (the "Panel").  *Id.*  Respondent denied the allegations in its Response [#7-2] to the Claim on April 5, 2016, later amended on April 28, 2016.

During the arbitration, Respondent filed a Motion to Dismiss [#7-3] arguing that Petitioner's claims were barred by FINRA's six-year statute of limitations.  Although Respondent here represents that the Motion to Dismiss [#7-3] "laid the groundwork for [the statute of limitations] arguments," the Motion to Dismiss did not reference state statutes of limitations, but instead relied exclusively on FINRA Rule 12206.  *Cross-Motion* [#12-1] at 11.

On December 3, 2016, Respondent's counsel, John Gibson ("Gibson"), stated via affidavit that he experienced a condition known as spinal stenosis and that he had been scheduled for emergency surgery on December 6, 2016.  *Aff. of Gibson* [#7-4] at 1.  Mr. Gibson's affidavit stated that, in the best case scenario, he could "return to light work as early as January and may be able to travel towards the end of February or March."  *Id.* at 2-3.  Mr. Gibson underwent heart surgery on December 19, 2016, and underwent spinal surgery on December 26, 2016.  *Cross-Motion* [#12-1] at 4.

On December 7, 2016, the Panel held a telephonic hearing to rule on Respondent's request for a continuance of the hearing on the Motion to Dismiss [#7-3].  *Id.* at 5.  The Panel continued the evidentiary hearing and rescheduled it for January 24, 2017.  *Id.*  On January 17, 2017, one week before the evidentiary hearing, Respondent filed a motion pro se to adjourn both the January 24, 2017 evidentiary and Motion to Dismiss [#7-3] hearings.

*See* [#7-6]. On January 18, 2017, the Panel granted Respondent's request to postpone the hearings. *Order* [#10-2].

On January 24, 2017, the Panel held a conference call to discuss Mr. Gibson's health and to reschedule the evidentiary and Motion to Dismiss [#7-3] hearings. *Order* [#10-3]. Mr. Gibson participated in the conference call, and the evidentiary hearing was rescheduled for April 10, 2017. *Id.* The Motion to Dismiss [#7-3] hearing was held on February 7, 2017, with Mr. Gibson again participating. *Order* [#10-4]. The Panel denied Respondent's Motion to Dismiss [#7-3]. *Id.* On March 8, 2017, Mr. Gibson withdrew from representing Respondent. *Award* [#7-11] at 3.

Prior to the final evidentiary hearing, Respondent raised "Standing Objections" in its Pre-Hearing Brief. *See Pre-Hearing Brief* [#7-10] at 9. Specifically, the objections are:

> Respondent is without its attorney who cannot physically conduct his duties and objects to these proceedings on the grounds that it violates the National Arbitration Act and is a deprivation of the right to be represented by counsel. Respondent incorporates all previous filings in this case from December 1st, 2016 forward as if included herein to document this objection.
>
> Claimant is time barred under FINA Rule 12206 from bringing her [sic] claims and as a result FINA Arbitration has no jurisdiction in this matter.

*Id.* The final evidentiary hearing was held from April 10-12, 2017. *Cross-Motion* [#12-1] at 7. After Petitioner presented his case-in-chief at the hearing, Respondent reasserted its Motion to Dismiss[4] under FINRA Rule 12206(b)(6).[5] *Award* [#7-11] at 3.

---

[4] It is unclear whether the reasserted Motion to Dismiss is identical to the Motion to Dismiss [#7-3] included in the record.

[5] FINRA Rule 12206(b)(6) states that a denied motion under the rule may not be re-filed, unless specifically permitted by panel order. Here, it appears the Panel considered a Motion to Dismiss on two separate occasions; first, on February 7, 2017 and again at the final evidentiary hearing ("After due deliberation, pursuant to Rule 12206(b)(6), the Panel denied the renewed motion."). *See Order* [#10-4]; *Award* [#7-11] at 3. The record is silent as to whether the Panel

After deliberation, the Panel denied the renewed motion. *Id.* On April 20, 2017, the Panel issued its decision. *Id.* The Panel awarded Petitioner compensatory damages of $130,789.00 plus interest at the rate of 8% compounded annually from the date the award was served until the balance of the compensatory damages were paid in full. *Id.* On April 25, 2017, Petitioner filed his Petition to Confirm Arbitration Award [#1] in this Court.

## II. Legal Standard

Courts must "exercise caution in setting aside arbitration awards because one purpose behind arbitration agreements is to avoid the expense and delay of court proceedings." *Bowen v. Amoco Pipeline Co.*, 254 F.3d 925, 932 (10th Cir. 2001) (quotation omitted). The review of arbitral awards is among "the narrowest known to the law." *Litvak Packing Co. v. United Food & Commercial Workers, Local Union No. 7*, 886 F.2d 275, 276 (10th Cir. 1989). Once an award is entered, "the finality of arbitration weighs heavily in its favor and cannot be upset except under exceptional circumstances." *Ormsbee Dev. Co. v. Grace*, 668 F.2d 1140, 1146-47 (10th Cir. 1982). The burden is on the party seeking to vacate an arbitration award to show that one of the limited grounds for doing so exists. *Dish Network, L.L.C. v. Ray*, 226 F. Supp. 1168, 1170 (D. Colo. 2016) (citing *Youngs v. Am. Nutrition, Inc.*, 537 F.3d 1135, 1141 (10th Cir. 2008)). A party "can only succeed by carrying an extremely heavy burden of proof." *Fizer v. Safeway Stores, Inc.*, 586 F.2d 182, 184 (10th Cir. 1978).

## III. Analysis

---

entered an ordered permitting "re-filing" of the Motion to Dismiss, but it did state "Respondent has asserted the Statute of Limitation as an Affirmative Defense . . . and may present evidence and argument on that Affirmative Defense at the evidentiary hearing." *See Order* [#7-9].

Respondent's Cross-Motion [#12-1] advances three arguments for vacating the award. The Court addresses each below.

**A. The Panel's Refusal to Postpone the Final Evidentiary Hearing**

The Federal Arbitration Act ("FAA") authorizes a district court to vacate an award "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(3). Nonetheless, "[b]ecause the primary purpose for the federal policy of favoring arbitration is to promote the expeditious resolution of disputes, a court's review of the arbitrator's decision to postpone or not postpone the hearing is quite limited." *ARW Expl. Corp. v. Aguirre*, 45 F.3d 1455, 1464 (10th Cir. 1995). The Court recently affirmed that an arbitrator's refusal to grant a postponement is not grounds to vacate an arbitration award if there is any reasonable basis for the arbitrator's considered decision not to grant a postponement. *Huitt v. Wilbanks Sec., Inc.*, No. 17-cv-00919-STV, 2017 WL 4697502, at *3 (D. Colo. Oct. 19, 2017) (citing *Healthcare Workers' Union Local 250 v. Am. Med. Response*, No. CV F 05-1333 AWI DLB, 2006 WL 2949262, at *1 (E.D. Cal. Oct. 16, 2016)). Indeed, arbitrators "are to be accorded a degree of discretion in exercising their judgment with respect to a requested postponement." *Berlacher v. PaineWebber, Inc.*, 759 F. Supp. 21, 24 (D.D.C. 1991) (citing *Fairchild & Co. Inc. v. Richmond, F. & P.R. Co.*, 516 F. Supp. 1305, 1314-15 (D.D.C. 1981)).

Here, the Court declines to disturb the Panel's decision not to further postpone the hearing due to lack of counsel for Respondent. The Panel postponed the hearing on two separate occasions to address Mr. Gibson's health concerns; once, for the December 7,

2016 telephonic hearing, and again on January 18, 2017.  *Order* [#7-5]; *Order* [#7-7]. Nonetheless, Mr. Gibson participated in both January 24, 2017, and February 7, 2017 conference calls.  *Response* [#15] at 4-6; *Order* [#10-4].

Further, beginning on March 8, 2017, Respondent was aware of Mr. Gibson's withdrawal from representation of Respondent.  This afforded Respondent over thirty days to secure new representation for the April 10, 2017 evidentiary hearing.  *See Martik Bros., Inc. v. Kiebler Slippery Rock, LLC*, No. 08cv1756, 2009 WL 1065893, at *3 (W.D. Pa. Apr. 20, 2009) (finding no abuse of discretion where arbitration panel denied continuance request based upon notification of counsel's withdrawal the day before the hearing was to commence).  The Panel could have reasonably concluded that Respondent's failure to obtain new counsel during this period justified the denial of any further continuances, or concluded that Respondent failed to offer sufficient support for its requested continuance. Regardless, the Court finds no adequate ground for vacating the award on this basis.

**B.     The Panel's Hearing of the Claim under FINRA Rule 12206**

Respondent further argues that the Panel exceeded its powers by hearing and ruling on claims which were beyond the Panel's jurisdiction under FINRA Rule 12206.  *Cross-Motion* [#12-1] at 10.  FINRA Rule 12206(a) states that "[n]o claim shall be eligible for submission to arbitration under the Code where six years have elapsed from the occurrence or event giving rise to the claim."  *Id.*  Respondent contends that the occurrence or event giving rise to the claim is the initial sale of the Annuity on September 22, 2008, and therefore, Petitioner needed to bring the action by September 22, 2014.  *Id.* at 12. According to Respondent, Petitioner's failure to do so left the Panel without jurisdiction to hear the claim.  *Id.*

In support of its argument, Respondent cites *Koppelman Ventures LLC v. Evergreen Energy, Inc.*, No. 11-cv-01550-PAB-KLM, 2011 WL 5294101 (D. Colo. Nov. 3, 2011). *Reply* [#13] at 4. In *Koppelman*, the Court held that "[u]pon completion of the arbitration, if [P]laintiff has grounds to believe the arbitrator was partial, it may seek to have the resulting arbitral award vacated." *Id.* at *1. Respondent cites *Koppelman* to support the proposition that "[t]his very Court has recognized its power to review and vacate an arbitration decision on procedural grounds." *Reply* [#13] at 4.

The Court does not find *Koppelman* relevant to this matter. First, Respondent has cited no evidence of impartiality on behalf of the Panel. Second, the crux of Respondent's argument is that the Panel exceed its jurisdiction by hearing the claim. However, there is a difference between overturning an arbitration award on the grounds of impartiality and overturning an award on procedural grounds. *Koppelman* does not support Respondent's argument that the Court may overturn an arbitration award on jurisdictional grounds.[6] Further, Respondent themselves note "In Koppelman, the Court refused to 'delve into . . . procedural matters' at the onset of a case, citing Howsam, and left them for the arbitrators' determination in the first instance." *Id.*

The Court is left with the guidance of the Supreme Court in *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002). In *Howsam*, the Supreme Court held that "NASD arbitrators, comparatively more expert about their own rule's meaning, are comparatively

---

[6] *Koppelman* merely states that a party may "object to arbitration based on the fundamental unfairness of the process for choosing an arbitrator." 2011 WL 5294101, at *1.

better able to interpret and to apply it."[7]  537 U.S. at 85.  Further, the *Howsam* court held that "'procedural' questions which grow out of the dispute and bear on its final disposition are presumptively *not* for the judge, but for the arbitrator, to decide." *Id.* Therefore, because it was for the Panel to determine whether Petitioner's claims were time-barred by Rule 12206(a), the Court rejects Respondent's invitation to second-guess the Panel's interpretation of the rule.[8]

## C. The Panel's Conclusion That the Claim Was Not Time-Barred under State Law

Respondent further argues that the Court should vacate an arbitration award if the arbitrators act in "manifest disregard" of the law.  *Cross-Motion* [#12-1] at 9-10. Respondent argues that the arbitrators manifestly disregarded the law by ruling on claims which were time-barred by Oklahoma law and under FINRA rules, and cite in support the Governing Law clause on the New Account Form. *Id.* However, Respondent has failed to demonstrate why the state statute of limitations applies to the arbitration. Assuming that state statute of limitations did apply to the arbitration, Respondent incorrectly assumes that Oklahoma procedural law applies because of the contractual choice of law provision. *See Fed. Deposit Ins. Corp. v. Petersen*, 770 F.2d 141, 142 (10th Cir. 1985) (stating that choice of law provisions in contracts are generally understood to incorporate only substantive law,

---

[7] NASD stands for the National Association of Securities Dealers. *See McCune v. SEC*, 672 F. App'x 865, 866 (10th Cir. 2016). FINRA succeeded NASD in 2007. *See id.*

[8] The Court notes that Respondent was a party to a nearly-identical lawsuit filed in the Court, which raised this same argument and in which the Court reached the same conclusion. *See Huitt v. Wilbanks Sec., Inc.*, 17-cv-00919-STV, 2017 WL 4697502, at *5 (D. Colo. Oct. 19, 2017). *See also Mid-Ohio Sec. Corp. v. Estate of Burns*, 790 F. Supp.2d 1263, 1271-72 (D. Nev. 2011) ("Because Rule 12206 is not a strict rule of eligibility, but a question for the arbitrators more akin to a statute of limitations, the arbitrators were free to interpret the rule as they saw fit, including adding in tolling provisions or a discovery rule.").

not procedural law such as statutes of limitation) (citing *Des Brisay v. Goldfield Corp.*, 637 F.2d 680, 682 (9th Cir. 1981)). Finally, even if the Court were to ignore these defects, Respondent's argument rests on an application of Oklahoma's discovery rules for breach of contract and fraud, an inherently factual determination.[9] Respondent invites the Court to search the underlying arbitration record to overrule the Panel on a factual issue, which the Court declines to do.

Nonetheless, as *Huitt* emphasizes, the Tenth Circuit Court of Appeals has held that an incorrect application of a state's statute of limitations does not rise to the level of manifest disregard of the law. 2017 WL 4697502, at *13 (citing *ARW Expl. Corp.*, 45 F.3d at 1463). Incorrect application of a state's statute of limitations is an "erroneous interpretation[ ] or application[ ] of law [that] will not be disturbed." *Barton v. Horowitz*, No. Civ. A. 97 N 1980, 2000 WL 35346163, at *8 (D. Colo. Mar. 6, 2000). Accordingly, the Court will not vacate the Award based on any purported error in applying the applicable state statutes of limitations.

**D.  Fees and Costs**

Petitioner seeks attorneys' fees and costs but has not cited to any statutory authority or contractual provision authorizing such a request. *Petition* [#1] at 3. Further, the Panel denied both Petitioner and Respondent's requests for attorneys' fees in the arbitration. *Award* [#7-11] at 3. The Court therefore denies Petitioner's request for fees and costs.[10]

---

[9] Respondent in its Cross-Motion [#12-1] cites Okla. Stat. Ann. tit. 12 § 95(1) for the breach of contract claim, and Okla. Stat. Ann. tit. 12 § 95(3) for the fraud claim.

[10] To the extent the Court has the discretion to award attorney's fees, the Court declines to award attorney's fees under the circumstances of this case where Respondent's Cross-Motion [#12-1], although ultimately without merit, was neither clearly frivolous nor undertaken in bad faith.

## IV. Conclusion

For the foregoing reasons,

IT IS HEREBY **ORDERED** that the Petition [#1] is **GRANTED** insofar as it seeks confirmation of the Arbitration Award but **DENIED** insofar as it seeks an award of attorneys' fees and costs.

IT IS FURTHER **ORDERED** that Respondent's Cross-Motion [#12-1] is **DENIED**.

IT IS FURTHER **ORDERED** that the Clerk of Court shall enter judgment in favor of Petitioner and against Respondent, as set forth in the Arbitration Award [#7-11], and **CLOSE** this case.

Dated: September 19, 2018

BY THE COURT:

*[signature]*

Kristen L. Mix
United States Magistrate Judge

---

*See Hypower, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh,* Pa., No. 13-CV-2326-DDC-TJJ, 2015 WL 7451171, at *4 (D. Kan. Nov. 23, 2015) (finding that neither the FAA nor Kansas state law nor the contract at issue authorized an award of attorney's fees); *Sterling Energy, Ltd. v. Friendly Nat'l Bank,* 744 F.2d 1433, 1435-36 (10th Cir. 1984) (stating that awarding attorneys' fees under a bad faith claim is within the discretion of the trial judge and requires a subjective finding of bad faith and more than merely finding a claim was frivolous when brought).